DANIEL A. LYNCH vs. FAYETTE F. FORBES.
SAME vs. INHABITANTS OF BROOKLINE.

Norfolk. December 13, 14, 1893. — May 17, 1894.

Present: ALLEN, HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Water Works — Eminent Domain — Necessity of Taking — Constitutional Law — Pleading — Demurrer.*

There is no constitutional right on the part of landowners in this State to have the question of the necessity or expediency of the taking of land for a public use in any particular instance submitted to a court or jury, and in the absence of any provision in the statutes submitting the matter to a court or jury the decision of the question lies with the body or individuals to whom the State has delegated the authority to take.

Where one of the articles in a warrant for a town meeting is "to appropriate money for land for the extension of our water supply and to authorize the treasurer to borrow the same," and the town votes that "such land shall be purchased or taken for extension of the water supply of the town as the selectmen and water board for the time being shall decide to be for the best interests

of the town," it is not necessary that the town should subsequently designate the specific land to be taken, or that it should formally ratify what has been done by the selectmen and water board.

Under St. 1872, c. 343, § 4, which was incorporated by reference into St. 1888, c. 131, expressly providing that the town of B. might exercise the "rights, powers, and authorities" given to it by the act "in such manner and by such commissions, officers, agents, and servants as said town shall from time to time choose, ordain, appoint, and direct," the town properly could delegate the power of taking land for a public use to the selectmen and water board, and the taking when completed by them became the act of the town.

An averment in a bill in equity, brought to restrain a town from taking the land of the plaintiff for the purpose of increasing its water supply, that the town had previously taken all the land that it was authorized to take, is a conclusion of law, and not such an allegation of fact as would be admitted by the defendant's demurrer.

TWO CASES. The first case was an action of tort for trespass *quare clausum fregit.* Writ dated December 20, 1890.

Trial in the Superior Court, before *Dewey,* J., who directed a verdict for the defendant, and, at the request of the parties, reported the case for the determination of this court, in substance as follows.

The plaintiff proved his title to a parcel of land in Dedham, and the trespass alleged to have been committed thereon, and rested.

The defendant then offered evidence tending to prove that he was superintendent and engineer of the water works of the town of Brookline, acting under the direction of the selectmen and water board of the town; that in October, 1890, in the performance of his duties, he entered upon the land of the plaintiff, which was a part of the land taken by the town of Brookline on April 26, 1890, pursuant to St. 1872, c. 343, and St. 1888, c. 131, authorizing it to take land for the erection and maintenance of its water works, and surveyed the same, and set up thereon certain stone bounds which acts constituted the alleged trespass. The defendant proved the acceptance by the town of the statutes above mentioned, and introduced in evidence a vote passed at a town meeting held on April 23, 1890, — under an article in the warrant " to appropriate money for land for the extension of our water supply, and to authorize the treasurer to borrow the same," — " that such land shall be purchased or taken for extension of the water supply of the town as the

selectmen and water board for the time being shall decide to be for the best interests of the town, and that the sum of $20,000 be, and the same is hereby, appropriated to pay for the land so purchased or taken." On April 26, 1890, the selectmen and the water-board of Brookline took the land of the plaintiff, and on June 24, 1890, the taking was recorded in the registry of deeds for the county of Norfolk.

The plaintiff thereupon offered evidence tending to prove that in 1874 the town of Brookline took land in West Roxbury containing about seven and one fourth acres, and constructed thereon a water gallery, and erected water works by means of which water was drawn from Charles River and supplied to the town of Brookline and its inhabitants; that in 1875 it took about twenty-three and one third acres of land adjoining that previously taken, and that the land thus taken and held was all the land necessary and proper for the erection and maintenance of pumping stations, pipes, aqueducts, and other water works necessary and proper for conveying water from the Charles River to the town of Brookline, and for all other purposes mentioned in the act of 1872; and that on February 7, November 7, December 30, 1889, and on April 26, 1890, the town took sundry other parcels of land in Needham and Dedham, containing in all about two hundred and ninety-five acres, among the parcels of land last taken being that of the plaintiff.

The plaintiff further offered to show, by expert testimony, that his land was not necessary or useful for the purpose of laying or maintaining aqueducts or pipes, constructing or maintaining reservoirs, or such other works as were necessary or proper for raising, forcing, retaining, distributing, discharging, or disposing of the water which the town was authorized to take from the Charles River, or for any purpose within the authority given by the acts of 1872 and 1888. He further offered to show that the town of Brookline had laid a pipe across the Charles River from its pumping station on the Boston side to the land taken in Dedham on February 7, 1889, and that it had sunk many wells in the land, and was drawing from them a supply of water, and that from a part of the wells, at least, the water so drawn

was not obtained from the river by percolation or otherwise. This evidence was excluded.

The plaintiff requested that the question whether the town of Brookline had exceeded its authority under the statutes be submitted to the jury, either under general instructions as to the scope and purpose of the authority given to the town under the statutes, or by special issues framed by the judge. He further contended that the defendant had failed to show that the town had complied with the formal requirements of the statute for taking land.

The judge declined to give the ruling requested, and ruled that the question as to whether the town had exceeded its authority and taken more land than it was authorized to take, or any land not within the authority given by the acts of the Legislature, could not be tested in this proceeding; that the defendant had shown that the town had conformed to the formal requirements of the statute as to the method of taking land, and that the defendant's justification was complete.

If the rulings were right, judgment was to be entered for the defendant on the verdict; otherwise a new trial was to be ordered.

THE SECOND CASE was a bill in equity, filed June 3, 1893, to remove a cloud upon the title to the land of the plaintiff.

The bill alleged that the plaintiff was the owner in fee simple of certain tracts of land in Dedham; that on June 24, 1890, the defendant filed in the registry of deeds for the county of Norfolk an instrument in writing by which it took, or claimed to take, as of April 26, 1890, for the extension of its water supply, pursuant to St. 1872, c. 343, and St. 1888, c. 131, certain parcels of land in Dedham, among them being the land belonging to the plaintiff; that by St. 1872, c. 343, the defendant was authorized to take, hold, and convey into and through it for its use and the use of its inhabitants water from the Charles River, and to take any lands or real estate necessary for laying pipes and aqueducts and maintaining the same, constructing and maintaining reservoirs, or such other works as may be deemed

necessary or proper for raising, forcing, retaining, or distributing or disposing of the water; that in 1874, in pursuance of its authority, the defendant took a parcel of land in West Roxbury containing about seven and one fourth acres, and constructed thereon a water gallery, and erected water works, by means of which water was taken from the Charles River, and supplied to the town and its inhabitants; that in 1875 the defendant took a further parcel of land adjoining the land previously taken, containing about twenty-three and one third acres; that the land thus taken and held by the defendant was all the land necessary or proper for the erection and maintenance of pumping stations, pipes, aqueducts, and other works necessary and proper for conveying the water from the Charles River to the defendant, and for all other purposes mentioned in the act of 1872; that on February 7, November 7, and December 30, 1889, and on April 26, 1890, the defendant took sundry other parcels of land in Dedham and Needham, containing in all about two hundred and ninety-five acres, among them being the land belonging to the plaintiff; and that, in pursuance of its alleged right in the land of the plaintiff thus taken, the defendant on October 29, 1890, and at sundry other times, entered upon the land of the plaintiff, and erected boundary stones and otherwise trespassed upon and injured the property of the plaintiff.

By paragraphs numbered 4, 5, and 6 of the plaintiff's bill he alleged that, prior to any of the last four takings or alleged takings of land by the town, viz. on February 7, November 7, and December 30, 1889, and April 26, 1890, the defendant had taken and purchased all the land that it was authorized to take under St. 1872, c. 343, and St. 1888, c. 131; that none of the land comprised within the last four takings was necessary or proper for laying or maintaining aqueducts or pipes, constructing or maintaining reservoirs, or any other works necessary or proper for raising, forcing, retaining, distributing, disposing, or discharging the water which the defendant was authorized to take from the Charles River; that especially was the land belonging to the plaintiff not within the authority given to the defendant to take land for the purpose of its water supply; that a large

part of the land belonging to the plaintiff was high land of a sandy surface, with a subsoil of ledge and rock, and distant from the river more than eighteen hundred feet; and that river water could not be obtained from it by percolation or otherwise, and that it was neither necessary nor fit for any use for which the defendant was authorized to take land; that all the acts of the defendant in taking or claiming to take the land of the plaintiff were beyond the powers of the town, and without legal authority, and in violation of the rights of the plaintiff; and that the acts of the defendant, and the filing of the taking in the registry of deeds constitute a cloud upon the title of the plaintiff, and that he has no adequate and complete remedy at law.

The prayer of the bill was that the taking or alleged taking of the land of the plaintiff be declared void, and that the defendant be ordered to execute to the plaintiff such a release as would remove the cloud upon his title, and that the defendant should be enjoined from taking or claiming to take the land of the plaintiff, and for the assessment of damages.

The answer admitted the taking of the several tracts of land, as alleged in the bill, and denied paragraphs 4, 5, and 6 thereof. It averred that, after the taking of the land of the plaintiff, the defendant by its servants and agents entered thereon for the purpose of surveying it, and set up certain boundary stones thereon, as alleged in the bill. It further averred, that by St. 1872, c. 343, and St. 1888, c. 131, both of which acts were duly accepted by it, it was duly authorized to take the various tracts of land as alleged by the plaintiff, and to do all the acts alleged in the premises; that all the land taken by it is either situated in the Charles River or on its banks, or is surrounded by the river, and is well adapted for the uses of the defendant for its water supply; that all of the land so taken is necessary for the use of the defendant for its water supply, and for the purpose for which it was taken under the statutes; and that all the lands so taken by the defendant are within the water-shed of the Charles River.

The defendant also demurred to the bill, and assigned as grounds thereof want of equity, that the plaintiff had a plain, adequate, and complete remedy at law, and laches.

Hearing before *Morton*, J., who, at the request of the parties, reserved the case for the determination of the full court upon the bill and demurrer. If the demurrer should be sustained, the bill was to be dismissed; otherwise, to stand for hearing.

*G. F. Williams & G. W. Anderson*, for the plaintiff.

*C. A. Williams*, (*M. Williams* with him,) for the defendants.

MORTON, J. The principal questions involved in these two cases are the same, and by agreement of parties they were argued and are to be considered together.

The plaintiff contends, in both cases, that the taking was unlawful, and at the trial of the case in trespass he offered to show that, prior to the taking in question, the town had taken all the land that it needed, and that this was not suitable and was not necessary, useful, or proper for any of the purposes named in the acts under which it was taken. The plaintiff concedes, what is well settled, that the question whether a necessity exists for the taking of private property for a public use is a legislative, and not a judicial one. He does not deny that the taking of land for water works and a water supply for the general benefit of the inhabitants of a city or town is a taking for a public use; but he contends that where, as here, the authority is given " to take . . . any lands or real estate necessary," etc., the question of the necessity, so far as it relates to the land actually taken, is one of fact, to be settled by the court or jury. Such has not been deemed to be the law in this State, though it is said in a work of established authority that the constitutions of some of the States require it to be done. *Talbot* v. *Hudson*, 16 Gray, 417. *Dorgan* v. *Boston*, 12 Allen, 223. *Eastern Railroad* v. *Boston & Maine Railroad*, 111 Mass. 125. *Lund* v. *New Bedford*, 121 Mass. 286. Cooley, Const. Lim. (5th ed.) 538, note. There is no constitutional right on the part of the landowner in this State to have the question of the necessity or expediency of the taking in any particular instance submitted to a court or jury. *Holt* v. *Somerville*, 127 Mass. 408, 411. In the absence of any provision in the statutes submitting the matter to a court or jury, the decision of the question lies with the body or individuals to whom the State has delegated the authority to take. They have the same power as the State, acting through any regu-

larly constituted authority, would have. *Fall River Iron Works* v. *Old Colony & Fall River Railroad*, 5 Allen, 221, 226. *People* v. *Smith*, 21 N. Y. 595, 597. *Boom Co.* v. *Patterson*, 98 U. S. 403, 406. *Stockton & Darlington Railway* v. *Brown*, 9 H. L. Cas. 246. *Lewis* v. *Weston-Super-Mare Local Board*, 40 Ch. D. 55. Cooley, Const. Lim. (5th ed.) 538. See Lewis, Eminent Domain, § 238, note, for collection of cases. Of course neither the State nor its delegates can take under the guise of eminent domain the property of A. for the purpose of conveying it to B., or for a purpose clearly in excess of or at variance with the powers granted. No question of good faith, however, arises here, and the purpose for which the land was taken is within the scope of the acts authorizing it. The testimony that was offered was therefore rightly excluded, as was also that offered for the purpose of showing that the town was obtaining water from land taken in February, 1889, and that a part at least of the water thus taken did not come from the river by percolation. The validity of the taking now in question does not depend on the conduct of the town in regard to another and an earlier taking.

The plaintiff further contends that the formal requirements in relation to the taking were not complied with, and that the action of the selectmen and water board should have been ratified by the town. If it were necessary so to do, we well might rest our decision on the ground that the action of the town in defending these suits and in seeking to avail itself of what the selectmen and water board had done, coupled with its entry upon and taking possession of the land, constituted a ratification of their acts. *Fisher* v. *Attleborough School District*, 4 Cush. 494. *Kincaid* v. *Brunswick School District*, 11 Maine, 188. But we think all the formal requirements were complied with. The article in the warrant was "to appropriate money for land for the extension of our water supply, and to authorize the treasurer to borrow the same." By it the question of the extension of the water supply was brought before the voters anew, and the consideration of the article necessarily involved the question whether there should be any extension, and whether any additional land should be taken. Thereupon the town voted that "such land shall be purchased

or taken for extension of the water supply of the town as the selectmen and water board for the time being shall decide to be for the best interests of the town." It was not necessary that the town should designate the specific land to be taken, or that it should formally ratify what was done by the selectmen and water board. The St. 1872, c. 343, § 4, which was incorporated by reference into St. 1888, c. 131, expressly provided that the town might exercise the "rights, powers, and authorities" given to it by the act "in such manner and by such commissions, officers, agents, and servants as said town shall from time to time choose, ordain, appoint, and direct." Under this provision the town properly could delegate the power of taking to the selectmen and water board. *Eastern Railroad* v. *Boston & Maine Railroad*, 111 Mass. 125. *Lund* v. *New Bedford*, 121 Mass. 286. *Lyon* v. *Jerome*, 26 Wend. 485. *St. Peter* v. *Denison*, 58 N. Y. 416. The taking when completed by them became the act of the town. If there were any doubt before as to the power of the town to take from time to time, until the number of gallons specified and the amount of indebtedness authorized had been reached, the action of the Legislature in passing the act of 1888 without imposing any additional restrictions, and increasing the quantity of water that might be taken and the amount of indebtedness that might be incurred, would appear to have sanctioned the construction adopted by the town in regard to successive takings.

The plaintiff contends that by the demurrer the defendant admits that it had taken all the land that it was authorized to take before any of the last four takings, that none of the land included in the last four takings was necessary or proper for any of the purposes named in the acts, and that the plaintiff's land was not necessary or fit for any use for which the defendant was authorized to take and purchase land. The effect of the demurrer is to raise, more forcibly perhaps, the same question that was presented by the offer of proof in the case in trespass, namely, whether this court or any court can revise the action of the town authorities in taking the plaintiff's land. For reasons already given, we are of opinion that it cannot. The averment that the town had

taken before the last four takings all the land that it was authorized to take is a conclusion of law, and not an allega-tion of fact, and has already been considered.

The result is, that in the first case the entry must be Judg-ment on the verdict, and in the second, Bill dismissed, with costs, and it is                                          *So ordered.*