In Equity.

ANNIE G. BROWN *vs.* KENNEBEC WATER DISTRICT.

Kennebec.    Opinion May 20, 1911.

*Eminent Domain.    Delegation of Power.    Necessity for Taking Land.    Judicial
Power.    Determination.    Payment of Compensation.    Pleading.    Demurrer.
Constitution of Maine, Article I, section 21.    Private and Special
Laws, 1899, chapter 200, sections 2, 5, 6 ; 1905, chapter 152.*

Private and Special Laws of 1899, chapter 200, as amended by Private and
Special Laws of 1905, authorizes the Kennebec Water District to take and
hold, by the right of eminent domain, "land and real estate necessary for
the purpose of preserving the purity of the water and watershed" of China
Lake, its source of supply.

Courts cannot inquire into the necessity for condemning land, in the absence
of abuse by officers authorized by the legislature to determine the question.

A landowner has no constitutional right to have the necessity of condemna-
tion determined by a court or jury, and, unless the courts are authorized
by statute to determine or revise the question, the decision of the legisla-
ture, or of its chosen agents, is conclusive.

Statements that land is so situated as to make its condemnation so manifest
a perversion of power as to be null and void, being conclusions of law from
facts not stated, are not admitted by demurrer.

Section 21 of Article I, of the Constitution of Maine declares that "private
property shall not be taken for public uses without just compensation ;"
but this does not compel the legislature to require the payment of such
compensation to precede the temporary occupation of land "as an inci-
pient proceeding to the acquisition of a title to it or to an easement in it."
According to the rule established in Maine, that clause of the Constitution
operates to prevent the permanent appropriation of the property without
the actual payment or tender of a just compensation for it, and the right
to such temporary occupation will become extinct by an unreasonable
delay to perfect the proceedings, including the payment of compensation.

Unless compensation is made within a reasonable time for land sought to be
condemned, damages may be recovered for the continued occupation and
for injuries resulting from the prior occupation.

In equity.   On report.   Bill dismissed.

Bill in equity praying for an injunction to restrain the defendant from entering in or upon the plaintiff's land and from taking, using or appropriating her land without her consent.

The defendant demurred to the bill and the case was reported to the Law Court upon bill and demurrer.

The case is stated in the opinion.

*Benedict F. Maher, and Mark J. Bartlett,* for plaintiff.

*Harvey D. Eaton,* for defendant.

SITTING :   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

WHITEHOUSE, J.   In this bill in equity the plaintiff prays for an injunction to restrain the Kennebec Water District, the defendant named in the bill, from "entering in or on the plaintiff's land" therein described "and from taking, using or appropriating said land without the consent of the plaintiff."   A preliminary injunction was granted upon the filing of a statute bond in the sum of $500.   The defendant demurred to the bill "and for cause of demurrer shows that the plaintiff has not made or stated a case requiring the intervention of the court."   The case is reported to the Law Court upon bill and demurrer.

It appears from the allegations in the second paragraph of the plaintiff's bill that on the 12th of May, 1910, the defendant Water District by its trustees, filed in the office of the clerk of courts a certificate of taking declaring that "in accordance with the provisions of chapter 200 of the Private and Special Laws of 1899, as amended by chapter 152 of the Laws of 1905, for the purpose of preserving the purity of the water and water shed of China Lake, the Kennebec Water District hereby takes as for public uses" the plaintiff's land therein described.

It is further alleged in the bill that the defendant district is not authorized by its charter nor by the law of the land, to take the plaintiff's land by the exercise of eminent domain ; that the plaintiff's land is so far removed from the intake pipe and otherwise so

situated as to render any attempted taking by the defendant in the exercise of eminent domain, if the defendant possessed such right, for the purposes stated in its certificate, so gross and manifest a perversion of the power, as to be null and void; that the action threatened by the defendant will constitute a continuing trespass upon the plaintiff's property, working irreparable injury to her, for which she has no adequate remedy at law, and finally that the threatened action on the part of the defendant to enter upon and use the plaintiff's land prior to the payment of compensation therefor, will constitute a taking of property without due process of law.

It is contended in behalf of the defendant District that the demurrer to the plaintiff's bill should be sustained for two reasons.

First, because the court does not have jurisdiction in equity but at law by the writ of certiorari, and second, for the reasons that upon examinations of the plaintiff's bill in connection with the legislative acts constituting its charter, the proceedings of the defendant District will be found duly authorized, and in every respect legal and valid.

Assuming without deciding that the court has jurisdiction in equity in this case, it is the opinion of the court that the demurrer to this bill must be sustained.

It is provided by section two of chapter 200 of the Private and Special Laws of 1899, that the defendant district "may take and hold by purchase or otherwise, any land or real estate necessary for erecting dams, power reservoirs, or for preserving the purity of the water and water shed, and for laying and maintaining aqueducts for conducting, discharging, distributing and disposing of water;" and section three of the same act provides that damages sustained by any persons or corporations in their property by the taking of any land whatsoever. . . . may be ascertained in the same manner and under the same conditions, restrictions and limitations as are or may be prescribed in case of damages by the laying out of highways."

Furthermore, chapter 152 of the Private and Special Laws of 1905, amendatory of the original act of incorporation in 1899, prescribes the method of commencing proceedings for condemnation

by the defendant District in terms manifestly designed to be made applicable to section two of the act of 1899 above quoted, as well as to section six : for it appears that in addition to the general authority to "take and hold any land or real estate necessary for erecting dams," etc., granted by section two, special authority was conferred upon the district by section six, to take by purchase or by the exercise of the rights of eminent domain, the entire property and franchises of the Maine Water Company within the District and the towns of Benton and Winslow." And it was held in *American Woolen Company* v. *Kennebec Water District*, 102 Maine, 153, that the authority given to the Water District in its charter was not merely authority to exercise the power of eminent domain, not merely authority to take water after condemnation proceedings for that purpose, but authority to take water from China Lake directly and at once.

It thus clearly appears that the provisions of the defendant's charter not only disclose a manifest intention on the part of the Legislature to confer upon the Water District the power to take and hold, by the right of eminent domain, "land and real estate necessary for the purpose of preserving the purity of the water and water shed" of China Lake, but that the terms employed in these several provisions, construed in relation to each other, are undoubtedly apt and sufficient to effectuate that intention.

It is provided by section 5 of the original charter that "All the affairs of the Water District shall be managed by a board of trustees, composed of five members." The action of these trustees in filing the certificate of taking set out in the plaintiff's bill was clearly authorized by the defendant's charter, and it is not in question that the certificate itself and all of the formal proceedings for the condemnation of the land in question, were in conformity with the mode prescribed by the amended charter.

2. But it inferentially appears from the allegations in the plaintiff's bill that the substantial ground of complaint intended to be set forth is that the taking of the plaintiff's land was not "necessary for the preservation of the purity of the water and water shed" of China Lake.

But the question of the necessity of taking the plaintiff's land for the public purposes specified in the certificate of taking is not open to inquiry by this court.   According to the settled law of this State the decision of that question by the trustees of the Water District upon whom the Legislature conferred the power to determine it, is conclusive upon the courts, in the absence of evidence showing a manifest abuse of power or bad faith in its exercise.   This rule of law was fully examined and the leading authorities upon it collated in the recent case of *Hayford* v. *Bangor*, 102 Maine, 340, and it was there held that not only is the question of the exigency or necessity for the taking a matter for the Legislature, or those to whom it delegates its authority, but also the extent to which property may be taken, and that the decision of these questions by the tribunal or body upon whom the power has been conferred by the Legislature is not reviewable by the court.   There is no constitutional right on the part of the land owner to have the question of the necessity of the taking submitted to a court or jury ; and in the absence of any statutory authority for a determination or revision of .the matter by the court. the decision of the Legislature or its chosen agents is conclusive.   As observed by the court in *Burnett* v. *Boston*, 173 Mass. 176 :   "So long as the members of this Board act regularly and in good faith, their decisions upon the question of necessity is final."   See also *Lynch* v. *Forbes*, 161 Mass. 302 ; *Old Col. Petitioner*, 163 Mass. 356 ; Lewis on Em. Domain, sect. 238; Cooley's Const. Lim. 7 Ed., page 77 ; Dillon's Mun. Corp. sect 600.

In the case at bar it has been seen that there is no distinct averment in the plaintiff's bill that in taking her land there was a manifest abuse of power or bad faith in its exercise, on the part of the trustees of the defendant Water District.   The bill neither furnishes any definite information in regard to the actual distance of the plaintiff's land from the defendant's intake pipe, nor contains any specific statement of facts descriptive of the plaintiff's land and its physical conformation with respect to the lake, from which an abuse of power or bad faith on the part of the trustees could be inferred.   The statements in the sixth paragraph of the bill that

the situation of the land is "such as to render any attempted taking of it by eminent domain, for the purposes enumerated in the certificate, so gross and manifest a perversion of said power as to be null and void," are obviously conclusions of law from facts not stated, and not allegations of the facts themselves which would be admitted by demurrer.

3. Finally she complains in the bill that the threatened action of the Water District "prior to the payment of compensation for said land will constitute a taking of property without due process of law." But the law has also been settled against the plaintiff's contention on this branch of the case. *Cushman* v. *Smith*, 34 Maine, 247 ; *Nichols* v. *S. & K. R. R. Co.*, 43 Maine, 356 ; *Davis* v. *Russell*, 47 Maine, 443 ; *Riche* v. *Bar Harbor Water Co.*, 75 Maine, 91. Section 21 of Article one of the Constitution of Maine declares that "private property shall not be taken for public uses without just compensation ;" but this does not compel the Legislature to require the payment of such compensation to precede the temporary occupation of land "as an incipient proceeding to the acquisition of a title to it or to an easement in it." According to the rule established in this State, that clause of the Constitution operates to prevent the permanent appropriation of the property without the actual payment or tender of a just compensation for it, and the right to such temporary occupation will become extinct by an unreasonable delay to perfect the proceedings, including the payment of compensation. Unless such compensation be made within a reasonable time, damages may be recovered for the continual occupation and for injuries resulting from the prior occupation. *State* v. *Fuller*, 105 Maine, 571.

The certificate must accordingly be,

*Demurrer sustained.*
*Bill dismissed with costs.*