# JANUARY TERM, 1910.

*In re* CORNING'S ESTATE.

GLYNN *v.* CORNING.

WILLS — PROBATE —VENUE — JURISDICTION DEPENDENT ON RESI-
DENCE OF TESTATOR—PRIVATE INTERNATIONAL LAW—STATUTES.
The will of a person who is domiciled in another State at the
time of his death must be admitted to probate in the State of
the testator's domicile, before it can be admitted to probate
here.

Error to Saginaw; Gage (William G.), J.   Submitted
October 20, 1909.   (Docket No. 128.)   Reargued Jan-
uary 4 and 5, 1910.   Decided February 3, 1910.

Edward W. Glynn presented for probate the last will
and testament of Edward Corning, deceased.   The will
was allowed in the probate court, and Anna Corning ap-
pealed to the circuit court.   A judgment for proponent is
reviewed by contestant on writ of error.   Reversed.

*G. W. Davis*, for appellant.

*Durand & Holland*, for appellee.

OSTRANDER, J.   Edward Corning died testate Novem-
ber 26, 1908, at Saginaw, Mich.   His will was executed
December 7, 1907, at Saginaw.   He made his will after
consulting counsel in Saginaw.   His will recited:

"I, Edward Corning, born at the William Corning
homestead in the village of Webster, Monroe county,
State of New York, and taking my present residence from

my brother's home, No. 150 East 47th street of the city of New York, State of New York, do make, publish, and declare this as and for my last will and testament."

The provision appointing the executors reads as follows:

"I hereby appoint my said sister, Anna Corning, and Thomas J. Swanton, of the said city of Rochester, N. Y., as my executors of this my will for the State of New York, and my sister, Anna Corning, and Edward W. Glynn, of Saginaw, East Side, Michigan, as executors of this my last will for the State of Michigan."

After its execution, he deposited his will with his attorneys in Saginaw. After his death they gave the will to the executor, Glynn, who presented it for probate in the probate court of Saginaw county, Michigan. His co-executrix, Anna Corning, objected to the probate of the will in this State for two reasons:

(1) "Because the deceased was a nonresident of the State of Michigan, and his domicile and home were in the State of New York at the time of the date of said will, and also at the time of his death."

(2) "The said deceased did not own any real or personal property which was at the time of his death located in the State of Michigan."

The probate court admitted the will to probate, holding that the deceased left property in Saginaw county, and that this fact gave the court jurisdiction. The contestant, Anna Corning, took an appeal to the circuit court, alleging the same reasons for her appeal. The evidence shows that Mr. Corning lived in Saginaw continuously for about a year previous to his death, and for about two months prior to the execution of the will. The evidence discloses that the deceased had property in Saginaw county, among which was a mortgage executed to him upon land in that county. The case was tried in the circuit court before a jury, to whom were submitted two special questions:

(1) Was Edward Corning at the time of his death an inhabitant of Saginaw county?

(2) Did Edward Corning own any estate at the time of his death in Saginaw county ?

To the first question the jury found that Mr. Corning was not an inhabitant of Saginaw county at the time of his death. To the second question they found that he did have property in Saginaw county at the time of his death. The court thereupon entered judgment confirming the probate of the will. No contest was made over the validity of the will.

The question presented is whether the will of a person domiciled in another State, who died leaving an estate within this State, may be admitted to probate here before its validity is established in a proceeding in the courts of the domicile of the testator. The precise point seems to be for the first time now presented for decision in this court. Like the most of the American States, Michigan has an elaborate and very complete system for the administration of estates of decedents. It is to the statutes and to certain general and universally recognized principles supporting local jurisdiction that we must look for an answer to the question. It may avoid confusion to point out, at the outset, that the jurisdiction of the courts of each State to determine the domicile of a testator is not involved. Such jurisdiction is admitted, or if it is not admitted, is, nevertheless, undoubted. And the right to administer the particular estate is not involved. There can be no doubt concerning the power of the probate court of Saginaw county to administer the estate of this decedent, found within the State, wherever the owner died and whether he did or did not leave a valid will. Whether in any case the effect of admitting a foreign will to be probated may amount to an estoppel, *inter partes,* is not a question presented. See, generally, *Robertson* v. *Pickrell,* 109 U. S. 608 (3 Sup. Ct. 407); *Overby* v. *Gordon,* 177 U. S. 214, 223 (20 Sup. Ct. 603); *Scripps* v. *Wayne Probate Judge,* 131 Mich. 265 (90 N. W. 1061, 100 Am. St. Rep. 614). Power to admit wills to probate and to grant administration of estates is con-

ferred upon probate courts, generally, by 1 Comp. Laws, § 650, which reads:

"The judge of probate for each county shall have power to take the probate of wills, and to grant administration of the estate of all persons deceased, who were at the time of their decease inhabitants of, or residents in, the same county, and of all who shall die without the State, leaving any estate within such county to be administered; and to appoint guardians to minors and others in the cases prescribed by law, and shall have and exercise all such other powers and jurisdiction as are or may be conferred by law."

It is further provided in 3 Comp. Laws, §§ 9282–9284, for admitting, in this State, wills of those who were domiciled abroad, and for the manner of disposing of estates of testators domiciled abroad whose wills are so admitted to probate here. These and other provisions of the statutes must be read together. It is plain that the legislature has recognized the right of the courts of the domicile of a testator to conclusively determine the validity of the will, and quite as plain that the courts of the domicile of this testator have made no such determination. It has been repeatedly held that the issue here upon the offering of a domestic will for probate is "will or no will." We have then these two methods provided by the legislature for admitting wills of deceased persons to probate: One, to try out every issue upon which validity of the instrument depends; the other, to accept the determination of all of these issues by the courts of the domicile of the testator. There is no method pointed out for admitting a will here as valid to the extent of appointment of an administrator of the estate, leaving the question of its validity to be determined at the domicile of the testator. It is not conceivable that the courts of this State will inquire about and finally decide that a certain instrument is, or is not, a valid will, subject to having the determination reversed by the courts of any other State. Assuming the right of each State to assert complete jurisdiction *in rem* over all property of decedents found within the State, including

the right to determine, through its tribunals, the validity or nonvalidity of a foreign will, it is equally the right of each State, acting through its legislature, to accept as conclusive the judgment of the courts of the domicile of the testator as to the validity of his will and to permit his property, found in the State, to be disposed of according to the provisions of the will. I find in the statutes sufficient evidence of a State policy which denies to the probate court of Saginaw county the jurisdiction which it assumed when it admitted the particular will to probate. Holding these views, it is not important to refer to and review decisions of courts of other States in which a different view is expressed.

The judgment of the circuit court for the county of Saginaw is reversed, with costs to appellant, and the record is remanded, with directions to the probate court to refuse probate of the will.

MONTGOMERY, C. J., and HOOKER, MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.